# PENFIELD *v.* CHESAPEAKE, OHIO AND SOUTH WESTERN RAILROAD COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF NEW YORK.

No. 187.    Argued January 30, 1890. — Decided March 17, 1890.

In section 90 of the New York Code of Civil Procedure it is provided that "where a cause of action . . . accrues against a person who is not then a resident of the State, an action cannot be brought thereon in a court of the State, against him or his personal representative after the expiration of the time limited by the laws of his residence for bringing a like action, except by a resident of the State, and in one of the following cases: . . . 2. Where before the expiration of the time so limited, the person, in whose favor it originally accrued, was, or became, a resident of the State, etc.;" *Held*, following the decisions of the courts of the State of New York in parallel cases, that this statute contemplates that the plaintiff shall be an actual resident in the State, and that he does not become such by sending his family to the State of New York from another State, in which he and they were residing, with the intent that they should reside there, but remaining himself in the other State.

THE case is stated in the opinion.

*Mr. Rufus M. Williams,* for plaintiff in error, cited, among other cases: *Putnam* v. *Johnson,* 10 Mass. 488; *Blanchard* v. *Stearns,* 5 Met. 298; *Holmes* v. *Greene,* 7 Gray, 299; *Crawford* v. *Wilson,* 4 Barb. 504; *Fry's Election Case,* 71 Penn. St. 302; *State* v. *Hallett,* 8 Alabama, 159; *Dale* v. *Irwin,* 78 Illinois, 170; *Vanderpoel* v. *O'Hanlon,* 53 Iowa, 246; *Moorehouse* v. *Lord,* 10 H. L. Cas. 272; *Whicker* v. *Hume,* 7 H. L. Cas. 124; *Lord* v. *Colvin,* 4 Drew. 366; *Mitchell* v. *United States,* 21 Wall. 350; *Exeter* v. *Brighton,* 15 Maine, 58; *Shaw* v. *Shaw,* 98 Mass. 158; *State* v. *Aldrich,* 14 R. I. 171; *Shattuck* v. *Maynard,* 3 N. H. 123; *Long* v. *Ryan,* 30 Gratt. 718; *Cohen* v. *Daniels,* 25 Iowa, 88; *Fitzgerald* v. *Arel,* 63 Iowa, 104; *Boucicault* v. *Wood,* 2 Bissell, 34; *Doyle* v. *Clark,* 1 Flipp. 536; *Abington* v. *North Bridgewater,* 23 Pick. 170; *Thorndike* v. *Boston,* 1 Met. 242; *Collester* v. *Hailey,* 6 Gray, 517; *Langdon* v. *Doud,* 6 Allen, 423; *S. C.* 83 Am. Dec. 641; *Hallett* v. *Bassett,* 100 Mass. 167: *Kennedy* v. *Ryal,* 67 N. Y.

379; *Reed's Appeal*, 71 Penn. St. 378; *Tyler* v. *Murray*, 57 Maryland, 418; *Talmadge* v. *Talmadge*, 66 Alabama, 199; *Campbell* v. *White*, 22 Michigan, 178; *Chariton County* v. *Moberly*, 59 Missouri, 238; *Desmare* v. *United States*, 93 U. S. 605; *White* v. *Brown*, 1 Wall. Jr. C. C. 217; *Church* v. *Rowell*, 49 Maine, 367; *Gilman* v. *Gilman*, 52 Maine, 165; *S. C.* 83 Am. Dec. 502; *Report of the Judges*, 5 Met. 587; *McDaniel* v. *King*, 5 Cush. 469; *Otis* v. *Boston*, 12 Cush. 44; *Briggs* v. *Rochester*, 16 Gray, 337; *Wilson* v. *Terry*, 11 Allen, 206; *Hindman's Appeal*, 85 Penn. St. 466; *State* v. *Grizzard*, 89 N. C. 115; *Kellogg* v. *Oshkosh*, 14 Wisconsin, 623; *Hall* v. *Hall*, 25 Wisconsin, 600; *Kellogg* v. *Supervisors*, 42 Wisconsin, 97; *Morgan* v. *Nunes*, 54 Mississippi, 308; *Shepherd* v. *Cassiday*, 20 Texas, 24; *Cross* v. *Everts*, 28 Texas, 523; *Dupuy* v. *Wurtz*, 53 N. Y. 556; *Harris* v. *Firth*, 4 Cranch C. C. 710; *Hayes* v. *Hayes*, 74 Illinois, 312; *Littlefield* v. *Brooks*, 50 Maine, 475; *Mills* v. *Alexander*, 21 Texas, 154; *Jennison* v. *Hapgood*, 10 Pick. 77; *Bassett* v. *Wheeler*, 84 N. Y. 468; *Frost* v. *Brisbin*, 19 Wend. 11; *S. C.* 32 Am. Dec. 423; *Boardman* v. *House*, 18 Wend. 512; *Burrows* v. *Miller*, 4 How. Pr. (N. Y.) 349; *Isham* v. *Gibbons*, 1 Bradf. (N. Y.) 69; *Matter of Thompson*, 1 Wend. 43.

*Mr. B. F. Tracy*, (with whom was *Mr. W. W. MacFarland* on the brief,) for defendant in error, cited: *St. Clair* v. *Cox*, 106 U. S. 350; *Burnham* v. *Rangley*, 1 Woodb. & Min. 7, 11; *Frost* v. *Brisbin*, 19 Wend. 11 ; *S. C.* 32 Am. Dec. 423; *Matter of Thompson*, 1 Wend. 43; *Haggart* v. *Morgan*, 5 N. Y. 422; *S. C.* 55 Am. Dec. 350; *Bell* v. *Pierce*, 51 N. Y. 12; *Union Hotel Co.* v. *Hersee*, 79 N. Y. 454; *Queen* v. *Vice-Chancellor &c.*, L. R. 7 Q. B. 471; *Attorney General* v. *McLean*, 1 H. & C. 750; *Blackwell* v. *England*, 8 Ell. & Bl. 541; *Hewer* v. *Cox*, 3 El. & El. 428; *Board of Supervisors* v. *Davenport*, 40 Illinois, 197; *Storm* v. *Smith*, 43 Mississippi, 497.

Mr. JUSTICE HARLAN delivered the opinion of the court.

This action was brought in March, 1884, in the Supreme Court of New York, Kings County, by the plaintiff in error against the Chesapeake, Ohio and Southwestern Railroad

Company, a corporation created under the laws of Kentucky and Tennessee. Its object was to recover damages alleged to have been sustained by the plaintiff on the 30th of November, 1882, in the State of Tennessee, in consequence of the careless, negligent and wrongful conduct of the defendant and its servants, while he was a passenger upon one of its trains. Upon the petition of the company the action was removed into the Circuit Court of the United States for the Eastern District of New York, where, after the evidence was concluded, the jury, under the direction of the court, returned a verdict for the defendant. This direction was given because, in the opinion of that court, the plaintiff's cause of action was barred by the statutes of limitation of New York.

The statutes here referred to are in these words:

"The following actions must be commenced within the following periods, after the cause of action has accrued. . . . Within three years: . . . An action to recover damages for a personal injury, resulting from negligence." N. Y. Code of Civil Procedure, §§ 380, 383.

"Where a cause of action which does not involve the title to, or possession of, real property within the State, accrues against a person who is not then a resident of the State, an action cannot be brought thereon in a court of the State, against him or his personal representative, after the expiration of the time limited by the laws of his residence for bringing a like action. except by a resident of the State, and in one of the following cases:

"1. Where the cause of action originally accrued in favor of a resident of the State.

"2. Where, before the expiration of the time so limited, the person, in whose favor it originally accrued, was, or became, a resident of the State; or the cause of action was assigned to, and thereafter continuously owned by, a resident of the State." *Ib.* § 390.

A motion for new trial having been overruled, a judgment was rendered for the company. That judgment is here for review, the only error assigned being the court's instruction to find for the defendant.

It was agreed that at the trial the plaintiff gave testimony tending to show the following facts: He lived in Harlem, New York, when a boy of fourteen years of age, married in Brooklyn, removed from that city to Michigan, from the latter State to Illinois, and from Illinois to St. Louis, Missouri, where he had resided for about one year prior to the accident. At the time of the accident he was a travelling salesman for an agent of the Michigan Salt Association located in St. Louis, and when the trial took place, was engaged in that capacity. When injured, he resided in St. Louis, with his wife and children. In August, 1883, he "sent his wife and children to Brooklyn, New York, where they took up their residence and commenced to keep house, and where they have resided ever since August, 1883, and do now reside." The plaintiff himself did not go to Brooklyn with his family in August, 1883, nor did he join them there until December 31, 1883, or January 1, 1884. "He remained with his family in Brooklyn for about three months, when he again went to St. Louis, and from there went travelling for said agency as said salesman." He "again joined his wife and children the next December, 1884, and remained with them some three months, when he again went out on the road." He joined his family in October, 1885, and was with them at the time of the trial. He lived with them when at home, and always lived with his wife since their marriage, except when absent on business. The attorney for the defendant addressed the plaintiff at his place of business in St. Louis, up to December 28, 1883, on which day the latter notified him by letter of his change of address to Brooklyn, for which place he was in the act of starting to join his family.

Upon the issue as to the residence of her husband, Mrs. Penfield's evidence was, that they had lived together constantly for about twenty-two years, and she was always with him except when he was travelling. Having stated that at the time of the accident, and during the sickness of her husband, resulting from the injuries received by him, they resided at St. Louis, her examination continued: "Q. How long did you continue to live there yourself after this sickness? A. Until the next August. Q. What year was that? A. 1883. Q. In

August, 1883, what did you do ?   A. Came here to Brooklyn ; hired a house and went to house-keeping ; moved all my things I wished to retain, and have lived here ever since with my children.   Q. What about your furniture ?   A. Part I sold in St. Louis and part I brought here.   Q. And have you been residing here ever since ?   A. Yes, sir.   Q. Your husband's place of abode is here with you in your house ?   A. Yes, sir. Q. At the time you removed from St. Louis to Brooklyn will you state, if you know, the reason why your husband did not come on with you at that time ?"   This question was objected to as immaterial and irrelevant, and was not answered.

As the railroad company is a corporation of Tennessee, where the injury occurred, and as the plaintiff was not a resident of New York when the cause of action originally accrued to him, the suit was barred by section 390 unless he became a resident of the latter State before the expiration of the period limited by the laws of Tennessee for the commencement of actions like this, that is, before the expiration of one year from November 30, 1882. The contention of the plaintiff is that, although he was not in the State of New York for some years prior to December, 1883, he became, within the meaning of the statute, a resident of that State, when, in August, 1883, he sent his family to the city of Brooklyn. We are not aware of any determination of this precise question by the highest court of New York. But there are decisions of that court construing statutes, other than statutes of limitation, which contain the words "resident" and "residence." Those decisions may throw some light upon the present case.

The earliest of those cases, to which our attention has been called, is *In re Thompson*, 1 Wend. 43, 45. It arose under a statute, 1 Rev. Laws N. Y. (1813) c. 49, p. 157, the 23d section of which provided "that the estate, real and personal, of every debtor who resides out of this State, and is indebted within it, shall be liable to be attached and sold for the payment of his debts, in like manner, in all respects, as nearly as may be, as the estates of debtors residing within this State."   Chief Justice Savage, delivering the opinion of the court, said that the object of the statute was to authorize creditors to prosecute

for their debts when their debtors were abroad; and whether their absence from the State was permanent or temporary, whether voluntary or involuntary, the reason for giving this remedy to the creditor was the same. He said the question was "where was his actual *residence*, not his *domicil*. . . . The act is intended to give a remedy to creditors, whose debtors cannot be served with process. If the debtor absconds or secretes himself, then an attachment issues. If he notoriously resides abroad, then the attachment issues. But if he goes openly to another State or country, and remains there doing business, but intending to return when his convenience will permit, he is not, as his counsel contends, an absent debtor, and his property cannot be touched. He may become a bankrupt abroad, as has Alexander Thompson; his property may be taken by his partners, and used by them, or transferred to his foreign creditors, as is attempted in this case; and the creditor may stand by and acknowledge and regret the insufficiency of our laws, but the property cannot be touched. Surely the legislature never intended such a state of things. . . . The reason why this remedy is given against the property of debtors resident abroad is equally applicable whether the debtor is absent permanently or temporarily. No length of residence, without the intention of remaining, constitutes *domicil*. A debtor, therefore, by residing abroad, without declaring an intention to remain, might prevent his creditors from ever collecting their debts. In my judgment, the present case comes not only within the spirit of the act, but also within its terms."

In *Frost* v. *Brisbin*, 19 Wend. 11, 14, the court was required to determine the meaning of the word "resident," in the act of 1831, Statutes 1831, p. 396, providing that no person should be arrested on civil process in suits brought upon contracts, express or implied, except in cases where the defendant "shall not have been a resident of this State for at least one month previous to the commencement of a suit against him."

In that case it appeared that Brisbin, a citizen and resident of New York, purchased a stock of goods, took them to Milwaukee, and established himself in business in the latter city,

leaving his wife and child to board at his former residence in New York. There was evidence tending to show that he went to Milwaukee with intent to make it his permanent residence. But there was, also, evidence tending to show that he had no fixed purpose, when he went to that city, of making it his permanent abode, unless he was successful in business, and that when arrested he had the purpose — not having been thus successful — to close up his business and return to his former residence, though without any certain plans as to his future course.

The court, speaking by Chief Justice Nelson, said that if the case turned upon the defendant's formed intention and purpose of mind, and not upon the fact of actual residence, the law was for him. But upon a review of former decisions, construing statutes regulating the rights and remedies of creditor and debtor, he said: "The cases cited above establish that the transient visit of a person for a time at a place, does not make him a resident while there; that something more is necessary to entitle him to that character. There must be a settled, fixed abode, an intention to remain permanently at least for a time, for business or other purposes, to constitute *a residence* within the legal meaning of that term. . . . One of these cases expressly, and all of them virtually, decide that *actual residence*, without regard to the *domicil* of the defendant, was within the contemplation of the statutes. Whether, therefore, the defendant had so established himself at Milwaukee as to work a change of his domicil or not, is immaterial; for if we concede he has not, he may still be a *resident* there. The domicil of a citizen may be in one State or Territory, and his actual residence in another." After observing that upon the facts it must be assumed that the defendant commenced an actual and permanent residence in Milwaukee in the spring of 1836, but that since that date he had resolved to close his business there as soon as it could be conveniently done, and return to his former residence, the court said: "Has this change of intention worked a change of residence? for this is the most that can be pretended. If our exposition of the meaning of the term in the statute is correct, it clearly

did not. His actual residence is still at Milwaukee. He is still carrying on his business there, and may continue it for such time as he pleases. Change of mind may lead to change of residence, but cannot with any propriety be deemed such of itself."

In *Haggart* v. *Morgan*, 1 Selden, (5 N. Y.) 422, 428, which was the case of an attachment against the defendant as a non-resident debtor, it was held that although the defendant was *domiciled* in New York, he was, by reason of a continuous, though temporary, absence in New Orleans, for about three years, to be deemed a non-resident within the meaning of the statute regulating attachments.

In *Weitkamp* v. *Loehr*, 53 N. Y. Superior Ct. 79, 82, the court said: "Residence, in attachment laws, generally implies an established abode, fixed permanently for a time, for business or other purposes, although there may be an intent existing all the while to return to the true domicil."

These cases show that, within the meaning of the statutes regulating attachments against the property of debtors, as well as those regulating arrests on civil process for debts, it was the actual residence of the defendant, and not his domicil, that determined the rights of the parties.

A like construction appears to have been given, or assumed, by the courts of New York in regard to similar words in that clause of its statute of limitations, which provides that if, after the cause of action shall have accrued, the defendant shall "depart from and reside out of the State, the time of his absence" shall not be included in the period of limitation. The Supreme Court of the State, discussing that provision, said: "The expressions 'and reside out of the State' and 'the time of his absence' have the same meaning; they are correlative expressions. So that while the defendant in this case resided out of, he was absent from, the State, and accordingly, until he again became a resident of the State, the suspension of the operation of the statute continued." *Burroughs* v. *Bloomer*, 5 Denio, 532, 535. It was held in that case, as well as in two later and well considered opinions, the one of the Superior Court of the city of New York, delivered by Mr.

Justice Duer, and the other of the Court of Appeals, delivered by Judge Selden, that where a defendant, after the cause of action accrued against him, departed from and resided out of the State several times, returning to the State in the intervening periods, all the times of absence or non-residence were to be added together and deducted from the term of limitation. *Ford* v. *Babcock*, 2 Sandf. (N. Y.) 518, 527, 531; *Cole* v. *Jessup*, 10 N. Y. 96, 104, 107. In each of those three cases it was not alleged or contended, and could not be inferred from any language in the pleadings, or in the opinion, that the defendant changed his domicil upon each departure and return. To the same effect is *Satterthwaite* v. *Abercrombie*, 23 Blatchford, 308. And, in a very recent case, the Court of Appeals said: "The law gives a creditor six years' continued presence of his debtor within the State after the cause of action has accrued." *Engel* v. *Fischer*, 102 N. Y. 400, 404.

To give a different meaning to the word "residence," or "resident," or "reside" in that clause of the New York statute of limitations which relates to plaintiffs, from that which the courts of the State have given it in that clause of the same statute which relates to defendants, as well as in various statutes of the State on other subjects, would produce much confusion.

Assuming, without deciding, that the testimony introduced for the plaintiff in the present case would warrant the impression that he had obtained a domicil in the State of New York by virtue of his wife and family, with his consent, having made their home in that State, there is nothing in the evidence which had the slightest tendency to show that his own actual residence was in the State of New York for many years prior to his going there from St. Louis in December, 1883.

To illustrate by referring to other statutes, let us suppose that the plaintiff, while engaged in business in St. Louis, had brought this action in the Supreme Court of New York, immediately after his family took up their residence in Brooklyn. Could he not have been compelled to give security for costs, under section 3268, of the Code of Civil Procedure, which declares that "the defendant, in an action brought in

a court of record, may require security for costs to be given . . . where the plaintiff was, when the action was commenced, . . . a person residing without the State." Or if the defendant in this action had, within the same period, brought, in one of the courts of New York, a suit against the present plaintiff, upon a cause of action for an "injury to personal property, in consequence of negligence," it could not be doubted, in view of the decisions heretofore cited, that an attachment could have been sued out, and sustained, under sections 635 and 636 of the code, which provide that a warrant of attachment against the property of one or more defendants in such an action may be granted upon the application of the plaintiff, where it appears by affidavit "that the defendant is . . . not a resident of the State." Could Penfield, in the last case supposed, have been deemed a non-resident of New York when sued for "an injury to personal property in consequence of negligence," and under the same facts be regarded as a resident of New York if he sued the same party "for a personal injury resulting from negligence?" Could he be deemed a resident of the State for the purpose of bringing this action, immediately after his family reached Brooklyn, and a non-resident if the railroad company had, at the same time, sued him in New York, and taken out an attachment against his property? The answer to these questions suggests that, in view of the course of decisions in New York, the plaintiff, by retaining his residence for purposes of business in St. Louis, did not become a resident of New York, within the meaning of section 390, until he changed his actual residence to that State. If he had, before the expiration of the period limited by the law of Tennessee, quitted his residence in Missouri and joined his family in New York for the purpose of making the latter State his residence in fact, he would have been entitled to bring his action within the period fixed by the laws of New York for the commencement of actions like this by one who is a resident of that State when the cause of action accrues.

As under the evidence the jury could not, by any reasonable inference from the proof, have found that the plaintiff became

himself a resident of New York, within a year after the cause of action accrued, the instruction to find for the defendant was right.

*Judgment affirmed.*