## RAILROAD *v.* FERGUSON.

### (*Knoxville.*　November　3,　1900.)

1. NAVIGABLE STREAM. *What is.*

    A river is navigable which is occasionally, during good tides, used for steamboat navigation, although its navigability has not been declared or recognized by statute, State or Federal. (*Post, pp. 553–556.*)

    Cases cited : Elder *v.* Burrus, 6 Hum., 367; Stuart *v.* Clark, 2 Swan, 9; Sigler *v.* State, 7 Bax., 493.

2. SAME. *Power of State over.*

    The State Legislature has undoubted power to authorize the obstruction of navigable streams situate entirely within the territorial limits of the State—*e. g.*, by the construction of railroad bridges over same. (*Post, pp. 556, 557.*)

3. SAME. *Authority to build bridges over, construed.*

    Authority conferred upon a railroad company by its charter to "build bridges" does not give the right to obstruct navigable streams by permanent structures of this character. (*Post, pp. 557–560.*)

    Cases cited : Cantrell *v.* Railroad, 90 Tenn., 638; Railroad *v.* Hicks, 5 Sneed, 427.

4. SAME. *Right to obstruct, not acquired by prescription.*

    A prescriptive right to obstruct a navigable stream—*e. g.*, by an unauthorized railroad bridge—cannot be acquired by the maintenance of the obstruction for any length of time, however great. (*Post, pp. 560, 561.*)

    Case cited : Elkins *v.* State, 2 Hum., 542.

5. SAME. *Question of navigability one of fact for jury.*

    The question of navigability of a stream is one of fact for the jury. (*Post, p. 562.*)

Railroad v. Ferguson.

6. PRESCRIPTION. *Right by, must be specially pleaded.*

Right by prescription, when relied on as a defense, must be specially pleaded. It cannot be shown under the general issue. (*Post, pp. 560, 561.*)

7. SAME. *Not error to charge statutes relating to, when.*

It is not error for the Court to charge the statutes relating to the navigability and obstruction of navigable streams, especially when it is clear that the stream in question is navigable independently of statute. (*Post, p. 561.*)

Code construed : §§ 1808, 6869 (S.); §§ 1513, 5746 (M. & V.); §§ 1299, 4913 (T. & S.)

FROM HAMILTON.

Appeal in error from Circuit Court of Hamilton County. FLOYD ESTILL, J.

MAYFIELD, SON & AIKEN and COOKE, SWANEY & COOKE for Railroad.

GARNETT ANDREWS, S. B. SMITH, and CHAMP & ANDREWS for Ferguson.

BEARD, J. The defendant in error was the owner of a steamboat built for the purpose of and used by him in plying the Hiwassee river when there was sufficient depth of water.

In his declaration filed in this cause it is averred that plaintiff in error maintained a bridge over this stream so low as greatly to interfere with its navigation, and that by reason of such improper construction his seamboat was "wrong-

fully, unlawfully, and unjustly prevented from navigating said stream and from reaching its destination in time, to his great and special damage and injury." For the loss sustained in this alleged unlawful detention this action was brought.

The railway company first demurred to the declaration. This demurrer was overruled by the Court, but as no complaint is made of the action of the trial Judge in this respect, it is unnecessary to set out the grounds of demurrer. Pleas —six in number—were then filed. The first of these was the plea of not guilty. The second, third, and fourth, and fifth pleas set up as a bar to the action, in one form or another, a prescriptive right to maintain the bridge, because the railway company and its predecessors in title had built and maintained it or similar structures in the same position for more than twenty years, and more than fifty years before the injury complained of. The sixth plea was that of the three-years statute of limitations. The pleas referred to above as raising the prescriptive right of the defendant to maintain the bridge in its then altitude were demurred to and the demurrer was sustained. So the cause proceeded to trial upon the two pleas, one of not guilty and the other the statute of limitations, and resulted in a verdict and judgment for the plaintiff.

From the agreed statement of facts it appears that the original right to erect and maintain a

bridge at the point in question is found in a charter granted by the Legislature of Tennessee to the Hiwassee Railroad Company in 1836, and in the exercise of this right that company, as a part of its railroad, constructed a bridge between "Calhoun in McMinn County and Charleston in Bradley County," at some time prior to the year 1845; and that, under legislative authority subsequently conferred, all the corporate rights, franchises, and property of this company and of its various successors passed ultimately into the present plaintiff in error. It further appears that its predecessors in title and the present owner, the plaintiff in error, "have continuously and successively rebuilt and maintained said bridge . . upon and at the site of its original location, and that said railroad bridge has not, since its original erection, at any time been lowered to a less height above the river than was the original bridge," and, in fact, "that the bridge now in controversy is somewhat higher than was the original structure."

It also appears "that in the spring season and winter, when there is a good tide in the river, a light draught steamboat now and then runs up the river to the mouth of the Ocoee river, in Polk County, Tennessee, some fifteen or twenty miles by river above Charleston," and that at high tide such a boat can run up to a point some twenty-five or thirty-miles above Charleston.

The case was tried upon this agreed statement of facts and evidence of the additional fact that at a certain period within three years before the institution of this suit, when the river was swollen to a considerable but not unprecedented degree by a heavy rainfall, the steamboat of the defendant was detained while transporting a cargo of valuable freight by the obstruction of this bridge, to the loss of its owner.

On this record it is clear that the Hiwassee was a navigable river within the definition of such a stream, as frequently repeated by this Court. *Elder* v. *Burrus,* 6 Hum., 367; *Stuart* v. *Clark,* 2 Swan, 9; *Sigler* v. *State,* 7 Bax., 406.

The fact that it has never been declared a navigable river is immaterial, as it does not require legislative sanction of either Congress or of the State to give a stream navigable status. *Little Rock Railroad* v. *Burke,* 39 Ark., 403.

The stream is entirely within the territorial limits of Tennessee and it was within the power of the Legislature of the State to authorize the construction of this bridge, notwithstanding it might work inconvenience to the right of navigation. *Commonwealth* v. *Breed,* 4. Pickering, 460; *Depew.* v. *Trustees of W. & E. Canal,* 5 Ind., 8.

The rule as laid down by Judge Cooley in his work on Constitutional Limitations, p. 592, is that "if the stream is not one which is sub-

ject to the control of Congress, the State law permitting the erection cannot be questioned on any ground of public inconvenience. The Legislature must always have power to determine what public ways are needed and to what extent the accommodation of travel over one way must yield to the greater necessity of another."

The question, therefore, in such a case is, Has the Legislature, while giving authority to build a bridge, made it lawful for the company so to construct it as to prove, either all the time or at recurring periods, an obstruction to craft adapted to its navigation? This question plaintiff in error insists is answered by its charter. Upon referring to that, however, it is found that the authority thus given is simply "to build bridges." The character of such bridges is not defined nor are the names of the streams mentioned to which this authority is to be applied. Can there, then, be implied from this general authority "to build bridges" the power to so construct them as either to destroy or else to interfere seriously with the passage of water craft upon such internal streams as may be crossed by the company in the extension of its line of road? We think not. The State is interested in the preservation of the natural ways of communication between its different and separated communities, which may greatly serve their convenience and comfort, as well as in the building and operation of new and artificial

lines. In the absence of express provisions it will not be assumed that it was the purpose of the Legislature to authorize the construction of a permanent structure over one of its streams susceptible of use for navigation, which would seriously impede the enjoyment of that use. It would be otherwise as to obstructions which were temporary in character and absolutely necessary in the erection of a lawful structure. While during their existence they might work inconvenience to the public in depriving it of the full use of the stream, yet if this obstruction was necessary to the exercise of the granted right, it would not be declared illegal. *People* v. *Horton,* 60 N. Y., 610; *Cantrell* v. *Railroad,* 90 Tenn., 638.

In *Hamilton* v. *Vicksburg, Shreveport & Pacific R. R. Co.,* 119 U. S., 280, it is said: "In the case at bar no specific directions as to the form and character of the bridges over the streams on the line of the railroad were prescribed by the Legislature of the State. The authority of the company to construct them was only an implied one, from the fact that such structures were essential to the continuous construction of the line. Two conditions, however, must be deemed to be embraced within this implied power; one that the bridges should be so constructed as to insure safety to the crossing of the trains, and the other that they should not interfere unnecessarily with the navigation of the streams."

In *Cantrell* v. *Railway Co.,* supra, as in the foregoing case, the right to erect the bridge in question rested ·on implication from the State's grant of authority to build and operate the particular line of railroad. In that case the complaint was that the railway company, in the erection of a bridge over Clinch river, had obstructed its navigation by the use of temporary trestle and other structures, and this Court said such obstruction was not unlawful if it covered no more of the stream and was no longer continued than the necessity of the case demanded and required.

The charter right on which plaintiff in error rests for its defense in this case is not higher or greater than was that of the corporations involved in these last two cases; in this the right "to build bridges" is expressly given, while in those it arose by necessary implication. In neither was the form or character of such bridges prescribed. But as the "authority to throw a bridge over a navigable stream is an exception from the general law, by .which it is forbidden, granted by the Legislature in view of the greater advantages to the public which are expected to result from the improvement," this. authority "must be confined to the limits and conditions of the grant" (*M. & O. R. R.* v. *Hicks,* 5 Sneed, 427), and it will not be extended to cover a structure that is any respect a public nuisance." Under such granted power, if a bridge is erected over a

Railroad *v.* Ferguson.

navigable stream, "it must be sufficiently elevated as to admit of the safe and convenient passage of such boats or vessels as are most advantageously used for the conveyance of travelers or freight upon the river or water course spanned by the bridge, or if not thus constructed, there must be a draw of such size and structure as not materially to infringe the right of free and unobstructed navigation." *Jolly* v. *Terra Haute Draw Bridge Co.,* 6 McLean, 237.

Under the facts of the case, and in view of the rule as announced by these authorities, we have no hesitancy in saying that the railway company cannot protect itself against the present claim of the plaintiff below by an appeal to its charter.

It is insisted, however, by the company that the continued maintenance of this bridge "for twenty years and fifty years," though it be an impediment to navigation, gives it a prescriptive right which is a conclusive defense to this action. Even should it be conceded that a right to obstruct a navigable stream could be created by prescription, yet it is not relied upon by plea, so as now to be of avail to the plaintiff in error. As was said in the preliminary statement of the case, there were filed four pleas setting up in various forms the right of prescription, but on demurrer they were stricken out by the trial Judge. No assignment of error is made on this action. The case therefore stands, in this Court,

as if prescription had never been relied on. For the rule is well settled that a prescriptive right cannot be shown under the plea of the general issue, but must be set up by special plea. *Shields* v. *Schiff*, 134 U. S., 351; *McKyring* v. *Bull*, 16 N. Y., 307; *Matthews* v. *Ferres*, 45 Cal., 51.

But it is plainly inferable from the record that the learned counsel for the railway company abandoned their special pleas because satisfied that they tendered issues not maintainable in law. For the rule seems to be universally accepted that a right to obstruct a public highway cannot rest on prescription. Such an obstruction is a common nuisance. *Elkins* v. *State*, 2 Hum., 542; Elliott on Roads and Streets, p. 668; Gould on Waters, Sec. 532; *Arundel* v. *McCulloch*, 10 Mass., 70; *Miles* v. *Hall*, 9 Wend., 315; *Morton* v. *Moore*, 15 Gray, 573.

It is also contended by the railway company that the trial Judge improperly gave in charge to the jury §§ 1808 and 6869 of the (Shannon's) Code. There was no error in this. They were pertinent to the controversy. Even if they had not been they worked no harm to the company. For when it is once determined that the Hiwassee is a navigable river, it did not require the aid of § 1808 to make it a public highway; the common law, in the absence of § 6869, forbade its obstruction to the detriment of navigation.

21 P—36

Railroad *v.* Ferguson.

Again, it is insisted that the trial Judge erroneously instructed the jury that the question of the navigability of the Hiwassee river was one of fact to be determined by them. There was no error in this. *Daniel Ball* v. *United States,* 10 Wall., 557; *Morgan* v. *King,* 35 N. Y., 454.

Other questions arising in the case are disposed of orally.

The judgment of the lower Court is affirmed.