**YAROSS v. KRAEMER, Collector of Internal Revenue.**

Civil Action No. 2302.

United States District Court
D. Connecticut.

Feb. 23, 1949.

Bartlett, Keeler & Cohn, by Milton L. Cohn, all of Bridgeport, Conn., for plaintiff.

Adrian W. Maher, U. S. Atty., of New Haven, Conn., and Edward J. Lonergan, Asst. U. S. Atty., of Hartford, Conn., for defendant.

HINCKS, Chief Judge.

The plaintiff is a young man who while a professional hair-dresser used all his earnings for a training in aviation in the hope that he might eventually carve a career for himself as a pilot in commercial aviation. When his training was largely completed he was unable to find civil or

412

military employment in this country and so accepted employment by the Royal Air Force Ferry Command which was an agency of the Canadian government and in the course of that employment piloted planes to most of the combat areas of the world. He was compelled to pay income taxes on his salary received in this employment and this is an action brought to recover so much of the taxes paid as were assessed on that salary under the claim that because during the critical period he had been a "bona fide resident of a foreign country" earned income, such as his Canadian salary, was not included in his gross income under Sec. 116 of the Internal Revenue Code, as amended by the Revenue Act of 1942, c. 619, 56 Stat. 798, Sec. 148(a), 26 U.S.C. A. § 116.

The meaning of "resident" for purposes of Sec. 116(a) of the Internal Revenue Code is a question on which the leading cases are Swenson v. Thomas, 5 Cir., 164 F.2d 783, decided in favor of the taxpayer's claim of "residence" abroad, and Downs v. Commissioner, 9 Cir., 166 F.2d 504, decided unfavorably to the taxpayer's claim of residence abroad. It is worth noting at the outset that the opinion in the Downs case attributed the different results of these cases to a difference in facts rather than to any difference as to the applicable law. And it is plain that the facts of the instant case place it, for the incidence of the applicable legal principles, somewhere between these two cases.

■ The facts here are stronger for Yaross than the Downs facts in that Yaross, between his official flights had all the liberties and privileges of a Canadian civilian, including the right to select his own place of residence in Montreal and complete responsibility for his own maintenance; he was not, like Downs, subject to the restrictions of military personnel and to maintenance provided by his employer. And Yaross, unlike Downs, never had an unqualified intention to leave the country of his claimed residence forthwith upon the termination of his immediate objective. If there is validity to that provision of Regulations 29.211-2 which provides that an alien's status as a "transient or sojourner," and hence his status as a resident, " is determined by his intentions with regard to the length and nature of his stay,"[1] it is important to note that Yaross was less of a transient than Downs or even Swenson for it is abundantly plain that Yaross when he first went to Canada hoped to perfect a permanent connection with Canadian Aviation and even during his Canadian stay actively sought such a connection. The fact that, a bachelor without any dependents, he made his only home during his stay in Canada in a hotel is not inconsistent with his claim: for purposes of his employment he needed twenty-four hour telephone service generally available only in hotels. And that his situation was such that he chose his own living place and maintained it at his own expense is a fact more favorable to his contention than the corresponding facts of Downs' case.

There is, to be sure, one factor here which appears in neither the Downs nor the Swenson cases. Here, the taxpayer, throughout his Canadian employment, had maintained a proprietary interest in a business in the United States from which, without any personal service on his part, he had derived an income equal at times to about one-tenth of his Canadian salary. Also while under his Canadian employment he bought and sold another small business in Connecticut from which he had vainly hoped to reap some profit. It is abundantly plain, however, that these business ventures were wholly subordinate to plaintiff's interest in his Canadian employment and that he never would have let them interfere with any prospect of a permanent career in Canadian aviation.

■ Turning to a comparison of the facts with those of the Swenson case, I

---

[1] Regulations 29.211-2 provide that "resident" is antithetical to "transient" and that status as a "transient" is determined by "intentions with regard to the length and nature of" the stay. But this must not be taken to mean that one becomes a foreign resident only if his presence in a foreign country is animo manendi. Otherwise the regulation would have the effect of amending the statute by substituting domicile for residence as the criterion.

note that Yaross was less of a transient than Swenson in that his stay abroad was not accompanied by so sure an intention to return. For surely we may infer that Swenson never intended to stay on in the Columbian jungles after his explorations were over. On the other hand, Yaross, unlike Swenson, was not continuously present in the country of his claimed residence throughout the relevant period. Indeed, the plaintiff's short visits, some eleven in number, each of one to three days' length, with friends or relatives in Connecticut in rest periods between his flights, was a feature without counterpart in the Downs and Swenson cases. However, such visits when viewed against the entire background of the case I think insufficient to break the continuity of his Canadian residence. I hold that these occasional visits even in the aggregate were of a duration too short to be accorded controlling significance. They were only incidental to the main stream of the plaintiff's life. By and large, throughout the critical period the plaintiff's presence in this country, where no living quarters were reserved for him, was more casual, more occasional, and more transient than his presence in Canada where he had a full-time position and living quarters continuously reserved containing all the belongings used in his living.

I conclude, therefore, that for present purposes he was a bona fide resident of Canada.

It follows that he is entitled to the recovery which he seeks.