DONALD F. AND ELEANORE A. DAWSON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 474-69.    Filed November 20, 1972.

Donald F. Dawson, pro se.
*Stephen W. Simpson,* for the respondent.

OPINION

RAUM, *Judge:* In order for petitioner to qualify for the exclusion provided in section 911(a)(1), I.R.C. 1954,[2] he must establish not only that he was a bona fide resident of Australia, but also that his period of bona fide residence included "an entire taxable year." The Government contends that petitioner is not entitled to the exclusion on both grounds. We hold that he has satisfactorily carried his burden on the first point, but that he cannot prevail on the second.

1. Bona fide residence is primarily a question of fact, and it is, therefore, difficult to reconcile the many cases in the area. See *Joseph A. McCurnin*, 30 T.C. 143, 148; *Donald H. Nelson*, 30 T.C. 1151, 1153; *Leonard Larsen*, 23 T.C. 599, 604; *Sochurek* v. *Commissioner*, 300 F. 2d 34, 37–38 (C.A. 7). The principles to be applied are the same as those which govern the determination of what constitutes residence in the United States for an alien individual. See sec. 1.911–1(a)(2) and 1.871–2(b),[3] Income Tax Regs. The intention of the taxpayer is of prime importance. A listing of the factors which have been considered in determining whether a person is a "bona fide resident" is found in *Sochurek* v. *Commissioner, supra* at 38.[4]

---

[2] SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.

(a) GENERAL RULE.—The following items shall not be included in gross income and shall be exempt from taxation under this subtitle:

(1) BONA FIDE RESIDENT OF FOREIGN COUNTRY.—In the case of an individual citizen of the United States who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) which constitute earned income attributable to services performed during such uninterrupted period. The amount excluded under this paragraph for any taxable years shall be computed by applying the special rules contained in subsection (c).

Respondent has conceded that the amounts received which are at issue here were attributable to services rendered outside of the United States, were received within the time limit designated under sec. 911(c)(4), and were not paid by the U.S. Government or any of its agencies.

[3] Sec. 1.871–2 Determining residence of alien individuals.

(b) *Residence defined.* An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but, if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section in the absence of exceptional circumstances.

[4] The court in *Sochurek* v. *Commissioner*, 300 F. 2d at 38, stated in part as follows: Among the factors considered by the courts in determining whether a citizen of the United States has discharged his burden of satisfactorily establishing his claim of bona fide residence in a foreign country during an entire taxable year are the following:

(1) intention of the taxpayer;

An examination of the facts in the instant case, in the light of these various criteria, leads us to the conclusion that petitioner became a bona fide resident of Australia.[5] When he originally went to that country it was his intention to remain there for at least 15 months and for some indefinite period beyond that. This belief was clearly justified, since it was his company's practice to provide followup foreign assignments after the first project was completed. Indeed, Transworld had accepted another contract in the area to build a solvents refinery for the Shell Chemical Co., and it was asked to bid on another project for ICIANZ. Only an unusual series of events prevented both of these projects from coming to fruition, thus necessitating petitioners' early return to the United States.

In accordance with his original intention, petitioner's family accompanied him to Australia. They leased a house for 1 year, and participated in the social activities of the community. Both of the children attended local schools, and petitioner's wife took an active role in school affairs. While it is true that petitioner did not pay income taxes to the Australian government, this is not dispositive but is only one factor to be considered. *David E. Rose*, 16 T.C. 232, 238; *White* v. *Hofferbert*, 88 F. Supp. 457, 461–462 (D. Md.) ; *Meals* v. *United States*, 110 F. Supp. 658, 662 (N.D. Cal.) ; *Carpenter* v. *United States*, 348 F. Supp. 179 (N.D. Tex.). Cf. *Joseph A. McCurin*, 30 T.C. at 149. Clearly there was no motive of tax avoidance in petitioner's living in Australia. His entire pattern of behavior supports his claim of status as a resident, rather than a transient or sojourner.

The Commissioner's reliance on *Ernest Rudolf Hertig*, 19 T.C. 109, is misplaced. The petitioner in that case showed very little participation in the activities of the community. As the Court there stated (p. 114) :

---

(2) establishment of his home temporarily in the foreign country for an indefinite period ;

(3). participation in the activities of his chosen community on social and cultural levels, identification with the daily lives of the people and, in general, assimilation into the foreign environment ;

(4) physical presence in the foreign country consistent with his employment ;

(5) nature, extent and reasons for temporary absences from his temporary foreign home ;

(6) assumption of economic burdens and payment of taxes to the foreign country ;

(7) status of resident contrasted to that of transient or sojourner ;

(8) treatment accorded his income tax status by his employer ;

(9) marital status and residence of his family ;

(10) nature and duration of his employment; whether his assignment abroad could be promptly accomplished within a definite or specified time ;

(11) good faith in making his trip abroad; whether for purpose of tax evasion.

While all such factors may not be present in every situation, those appropriate should be properly considered and weighed.

[5] We reach this result without giving any weight to O.D. 127, 1 C.B. 165, which was relied on by petitioner, but which was declared obsolete in Rev. Rul. 68–560, 1968–2 C.B. 601. We note that although O.D. 127 was not formally declared obsolete until 1968, this does not mean that it "represent[ed] the controlling view of authority until that time." See *Maurice A. Enright*, 56 T.C. 1261, 1268–1269.

We have made our finding because within that explicit legislative purpose we view petitioner as being no more than a "transient or sojourner" [1] for a specific purpose and definite period in Afghanistan, *without a home there or its "obligations," living in the company barracks, eating at the company mess,* and who, on this record, was a "technician" merely temporarily away from home. * * * [Fn. omitted. Emphasis supplied.]

The opposite is true in the instant case. Moreover, we note that it is not necessary for petitioner to intend to make his home permanently in Australia or to give up his United States citizenship; it is possible to be a bona fide resident of one country while retaining one's domicile in another. *Swenson* v. *Thomas*, 164 F. 2d 783, 784–785 (C.A. 5). Indeed, the statute is specifically designed for use by United States citizens.

2. Although we have concluded that petitioner became a bona fide resident of Australia, the statute calls for something more. He must show that "he has been a bona fide resident * * * for an uninterrupted period which includes an entire taxable year." Sec. 911(a)(1), fn. 2 *supra*. Petitioner was a calendar year taxpayer, and since he departed from Australia in early 1967, the "entire taxable year" referred to in section 911(a)(1) must be the year 1966. But the record is clear that he arrived in Australia on January 3, 1966, and his residence in that country could not have commenced before that time.

The case is a hard one, and our sympathies are with petitioner. The statutory exemption relates only to earned income, and January 1 and 2, 1966, were holidays in Australia, when petitioner could not have performed any services for his employer. We referred to these circumstances at the conclusion of the trial, and raised the question whether in the context of this section the term "entire taxable year" had sufficient elasticity to include the present situation. We invited the parties, in connection with preparation of their briefs, to explore the legislative history of the provision with that thought in mind. However, the only legislative materials to which our attention has been called appear to point in the direction of supporting the Government's position.

Prior to 1951, the statute provided for the exclusion of foreign earnings from gross income only in the case of a taxpayer who was "a bona fide resident of a foreign country * * * during the entire taxable year." Sec. 116(a)(1) of the 1939 Code, as amended by sec. 148(a) of the Revenue Act of 1942, ch. 619, 56 Stat. 798. In 1951, Congress amended these provisions (sec. 321 of the Revenue Act of 1951, ch. 521, 65 Stat. 452) to cover the situation of a taxpayer who becomes a bona fide resident of a foreign country after the beginning of the taxable year and maintains such residence for an uninterrupted period which includes an entire taxable year—the very provisions that were incorporated in section 911(a)(1) of the 1954 Code, involved herein. It was thought that in such circumstances the exemption should extend to that portion of the taxpayer's first year abroad which includes his

foreign residence. Thus, the report of the Senate Finance Committee, which proposed that amendment, stated (S. Rept. No. 781, 82d Cong., 1st Sess., p. 53) : [6]

[Under existing law] exemption is denied an individual in his first year abroad unless he becomes a bona fide resident of the foreign country as of January 1. Section 321 of your committee's bill corrects this defect of present law by granting the exclusion with respect to "an uninterrupted period which includes an entire taxable year" with respect to which an individual was a bona fide resident of a foreign country.

Obviously, the committee regarded January 1 as the beginning of the year, but nevertheless provided for the exemption starting with the commencement of foreign residence if the taxpayer's period of uninterrupted residence included an "entire taxable year." Thus, if petitioner's foreign residence herein had persisted throughout 1967, the statute would relieve him of tax on his 1966 foreign earnings, even though he was not a resident of Australia for the full year. But petitioner gave up his Australian residence during the early part of 1967, and therefore cannot qualify for exemption in 1966, notwithstanding that he missed it by only 2 days. [7]

A further, and perhaps decisive impediment to petitioner's position is section 7701(a) (23) of the 1954 Code which defines "taxable year" to mean "calendar year, or the fiscal year ending during such calendar year, upon the basis of which the taxable income is computed under subtitle A." Thus, as the Government correctly points out, the Code defines "taxable year" for a calendar year taxpayer as the "calendar year," not just those days within a calendar year during which income was earned. And when Congress speaks in section 911(a) (1) of the *entire* taxable year," it would seem that we have no latitude within which we can give these words a more hospitable construction.

The difficulties presented by the statute are too great for an interpretation in petitioner's favor, notwithstanding his appealing equities. [8] He did not in fact become a resident of Australia until January 3, 1966; the report of the Senate Finance Committee explicitly indicates that it regarded January 1 as the start of the taxable calendar year; the statute affords relief to persons in petitioner's situation provided that he continued to remain a bona fide resident throughout the next full calendar year—a condition that was not satisfied herein; and, finally, the definition of "taxable year" in section 7701(a) (23)

[6] See also S. Rept. No. 781, 82d Cong., 1st Sess., pt. 2, pp. 38–39.

[7] Cf. *Hoofnel* v. *Commissioner*, reported together with *Downs* v. *Commissioner*, 166 F. 2d 504, 509 (C.A. 9), affirming 7 T.C. 1136, where a gap of 1 day occasioned by failure of a ship to depart on schedule by reason of the threat of enemy submarines was regarded as sufficient to block an exemption under the law as it stood in 1942.

[8] However, it should be noted that the equities are not entirely one-sided. For one thing, petitioner paid no income taxes to Australia. Furthermore, the predicament in which he finds himself is entirely of his own making, since the evidence establishes that he deliberately chose to visit the Fiji Islands for a short vacation before traveling to Australia.

272

appears to rule out the interpretation of "entire taxable year" for which petitioner contends. We find that these considerations, in the aggregate, are incompatible with a holding that petitioner was a bona fide resident of Australia for the "entire taxable year" 1966.[9] Accordingly,

*Decision will be entered for the respondent.*